MEMORANDUM AND ORDER
 

 SHUBB, Chief Judge.
 

 Plaintiff requests a preliminary injunction barring the strike threatened by defendant labor organizations.
 

 The Norris-LaGuardia Act states that the federal courts do not have jurisdiction to enjoin labor unions from striking. 29 U.S.C. § 104.
 
 [1]
 
 In
 
 Boys Markets, Inc. v. Retail Clerks Union, Local 770,
 
 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), however, the Supreme Court addressed the task of reconciling the Norris-LaGuardia Act with Section 301(a) of the Labor-Management Relations Act. Section 301(a) authorizes the district courts to enforce collective bargaining agreements, including those which include mandatory arbitration clauses. Because such clauses could not otherwise be enforced, the Court held that a labor strike may be enjoined if, and only if, it both violates a no-strike clause and concerns “a grievance which both parties are contractually bound to arbitrate.”
 
 Boys Markets,
 
 398 U.S. at 254, 90 S.Ct. 1583.
 
 [2]
 

 “The scope of the
 
 Boys Markets
 
 exception to the Norris-LaGuardia Act is very narrow.”
 
 Hardline Elec. v. Intern. Broth. Elec. Workers,
 
 680 F.2d 622, 627 (9th Cir.1982). The exception applies only in the case of a “clear” and “undisputed” contractual duty to arbitrate the underlying dispute.
 
 Matson Plastering Co., Inc. v. Operative Plasterers, Etc.,
 
 633 F.2d 1307, 1308, 1309 (9th Cir.1980).
 

 The instant matter arises from the following facts. Plaintiff bakes many varieties of bread, including bread which it does not market under the “Earthgrains” label. Plaintiff sells some of this bread to retail stores who then market it themselves under their own “private label.” Plaintiff also sells “secondary label” bread to retail stores which then market it generieally.
 

 Plaintiff employs drivers to transport and to deliver its bread. Driver/Salesmen generally deliver the bread purchased by retail customers, and earn a commission on sales plus a modest weekly salary. They also provide “rack service” by stocking and displaying the product in an attractive manner. Transport Drivers earn an hourly wage, and make “drop shipments” which do not include “rack service.” Section 17 of the parties’ collective bargaining agreement (the “Agreement”) generally requires this division of labor. Hearns Decl.Ex. A.
 

 Plaintiff wishes to begin using Transport Drivers to make deliveries of private/secondary label bread to the retail stores and distribution centers of Lucky’s, Raley’s, and Food-for-Less. Compl. ¶21. Though the defendant labor unions concede that the Agreement permits all other aspects of plaintiffs plan, they argue that it prohibits one
 
 *1205
 
 facet of it: delivery by Transport Drivers to multiple customers on a single run.
 

 The parties agree that Section 11 of the Agreement governs the resolution of their dispute. Section 11(C)(4) states:
 

 A delivery driver or a central distribution driver, who exclusively delivers private label or secondary products to a customer’s retail store without rack service and/or private label or secondary bakery products to a customer’s distribution center, shall be paid at the Transport driver hourly rate.
 

 Plaintiff contends that this section authorizes the changes it proposes to implement. Defendants, however, argue that because Section 11(C)(4) limits itself to deliveries made to “a customer’s” retail “store” or “a customer’s” central distribution “center,” it only authorizes Transport Drivers to deliver to a single customer per run. Defendants also point to Section 11(C)(6), which provides that 11(C)(4) may not be used to alter “previously existing practices ... more favorable to employees.” Defendants represent that the new plan will on the whole “decimate the route sales driver method of distribution.” Sawyer Decl. at 6:13-26.
 

 Disagreements over interpretation of the Agreement in general may not be the subject of strikes, and must be arbitrated.
 
 [3]
 
 Section 18 of the Agreement, however, exempts from the no-strike and mandatory arbitration clauses any “change in distribution methods ... not provided for under the terms of this Agreement.”
 
 [4]
 
 If plaintiff implements such a change without providing the affected unions thirty-days notice and securing their agreement, then the affected unions have the immediate right to strike.
 

 Plaintiff argues that
 
 Boys Markets
 
 permits injunctive relief, despite the express exception of Section 18 from the no-strike and arbitration clauses of the Agreement, because under plaintiffs interpretation of 11(C)(4) the proposed change is “provided for under the terms of this agreement.” Plaintiff offers the declarations of Donald Hopkins and James Ham, to show that the same 1984 negotiations added both this language and that of Section 11(C)(4) to the Agreement. Plaintiff argues that this establishes that Sections 18 and 11(C)(4) work in tandem.
 
 [5]
 

 Plaintiff, however, asks the court to engage in almost the exact inquiry forbidden by
 
 Matson
 
 and
 
 Buffalo Forge Co. v. United Steelworkers of America, AFL
 
 —CIO, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). The issues in
 
 Matson
 
 strongly parallel those of the instant suit. In
 
 Matson,
 
 a union had struck over an employer’s failure to pay a fine for late payment of contributions to a union trust fund. The
 
 Matson
 
 agreement permitted a strike for failure to make the payments themselves. The employer argued that the contract did not, however, permit a strike for failure to pay the fine, and asked for a
 
 Boys Markets
 
 injunction
 

 The Ninth Circuit vacated the injunction, holding that if the strike does not clearly both concern an arbitrable issue and violate a no-strike clause, then “the district court has no jurisdiction to enjoin strike activity.”
 
 Id.
 
 at 1309. Where the merits of the dispute itself may entitle a labor union to strike, giving the employer the benefit of an injunc
 
 *1206
 
 tion pending a decision by an arbitrator, “would cut deeply into the policy of the Norris-LaGuardia Act.”
 
 Id.
 
 at 1308-1309 (quoting
 
 Buffalo Forge,
 
 428 U.S. at 410-411, 96 S.Ct. 3141). Such a practice would,
 

 make federal courts potential participants in a wide range of arbitrable disputes ... not just for the purpose of enforcing promises to arbitrate, which was the limit of
 
 Boys Markets,
 
 but for the purpose of preliminarily dealing with the merits of the factual legal issues that are the subjects for the arbitrator and of issuing injunctions that would otherwise be forbidden by the Norris-LaGuardia Act.
 

 Id.
 
 at 1308-1309 (quoting
 
 Buffalo Forge,
 
 428 U.S. at 410-411, 96 S.Ct. 3141).
 

 Boys Markets
 
 does not apply to the instant case for the same reasons. In order to decide that the no-strike clause applies, the court would need to decide in plaintiffs favor a question of contract interpretation. Moreover, the court would need to decide this question as a matter of law. Plaintiff has failed, however, to submit evidence establishing that its interpretation of the Agreement is either “clear” or “undisputed.”
 
 Matson,
 
 633 F.2d at 1308, 1309. The court need not, and indeed cannot, decide that defendants have the right to strike. The court finds, however, that the Norris-LaGuardia Act deprives it of jurisdiction to prevent them from doing so. 29 U.S.C. § 104;
 
 see Matson,
 
 633 F.2d at 1308;
 
 see also Hardline Elec.,
 
 680 F.2d at 627 (vacating an injunction in the absence of specific factual findings establishing that “each issue covered by the injunction was arbitrable”).
 
 [6]
 

 IT IS THEREFORE ORDERED that plaintiffs motion for a preliminary injunction be, and the same hereby is, DENIED.
 

 [1]
 

 . “No court of the United States shall have jurisdiction to issue a restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute ... from ... (a) Ceasing or refusing to perform any work or to remain in any relation of employment.” 29 U.S.C. § 104.
 

 [2]
 

 . Even should this threshold requirement be met,
 
 Boys Marlaets
 
 only permits injunctive relief as "warranted under [the] ordinaiy principles of equity” that limit it.
 
 Boys Markets,
 
 398 U.S. at 254, 90 S.Ct. 1583.
 

 [3]
 

 .Section 35 of the Agreement provides, in relevant part:
 

 "NO STRIKE
 
 — NO
 
 LOCKOUT
 

 For the duration of this Agreement, there shall be no lockout by the Employer, nor shall there be any strike, slowdown or concerted refusal to perform work by the Union or its members provided however the following Sections of the contract shall not be subject to the grievance procedure set forth in Section 41 of this Agreement: Section 22 and Section 23. In the event any dispute arises between the Employer and Union concerning Sections 22 and 23, the Union shall have the express right to take whatever action it deems necessary to protect its interest and the interest of the employees, including the right to engage in a strike or other concerted activity.”
 

 Section 41 requires the arbitration of all grievances, and defines grievances to include:
 

 "Any complaint or dispute arising between the Employer and the Union which involves an alleged violation by either party, the application, interpretation or enforcement of any of the provisions of this agreement or for any disciplinary action which is alleged to be unjust shall be deemed a grievance."
 

 [4]
 

 . Section 18 provides that "[tjhis Section shall not be subject to the grievance procedure or the no-strike, no-lockout provisions of this agreement.” Plaintiff does not dispute that its proposed plan constitutes a "change in distribution methods."
 

 [5]
 

 . Nothing in these declarations, however, speaks to whether or not Transport Drivers making deliveries under 11(C)(4) may deliver to multiple customers on the same run, or to the application of 11(C)(6).
 

 [6]
 

 . Plaintiff contends that the mere presence of an ambiguity in 11(C) "triggers” the mandatory arbitration and no-strike clauses of the Agreement, and requires the issuing of an injunction.
 
 Mat-son
 
 and
 
 Buffalo Forge,
 
 however, direct the contrary: where the right to strike may be interrelated with an ambiguity on the merits, the court may
 
 not
 
 issue an injunction.